STATE EX REL. HOAGLAND, RESPONDENT, v. SCHOOL DISTRICT NO. 13 OF PRAIRIE COUNTY ET AL., APPELLANTS.

(No. 8420.)

(Submitted May 15, 1944. Decided June 29, 1944.)

[151 Pac. (2d) 168.]

*Mr. E. W. Popham* and *Mr. Desmond J. O'Neil,* for Appellants, submitted an original and a reply brief; *Mr. O'Neil* argued the cause orally.

*Mr. R. V. Bottomly,* Attorney General; *Mr. Fred Lay, Mr. Alfred F. Dougherty,* Assistant Attorneys General; *Mr. W. R. Flachsenhar,* and *Mr. W. B. Leavitt,* for Respondent, submitted a brief; *Mr. Flachsenhar, Mr. Lay* and *Mr. Leavitt* argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

This is an action brought by Herbert E. Hoagland as county superintendent of schools of Prairie County to restrain Nels Amundson and Florence Amundson, his wife, from exercising any of the functions of the board of trustees and clerk of School District No. 13, a third-class district, and to declare void the employment of Mrs. Amundson as teacher and the sale of a school house to her, and to restrain the county treasurer from accepting payment for the school house and from honoring any warrant issued in the name of the school district by the Amundsons. Findings of fact, conclusions of law and judgment were entered for plaintiff and against the defendants and the latter, except for the county treasurer, who failed to appear in the action, have appealed.

The facts are that Florence Amundson was employed as school teacher for the six years beginning in September, 1935, and ending in the spring of 1941; that during those years the population of the school district declined to such a point that in 1940 the only pupils residing in the district were the children of Nels and Florence Amundson; that in 1941 the only persons eligible as trustees were those defendants and Sophus Amundson, Nels Amundson's brother; that at the school election held in April, 1941, the three Amundsons were elected trustees— Sophus for a three-year term, Nels for a two-year term, and Florence for a one-year term. The first two qualified. Florence did not qualify as trustee, but continued to act as clerk, for which a small salary was paid.

The trustees took no action upon the employment of a teacher and in September, 1941, Florence Amundson claimed the right to teach under section 1075, Revised Codes, because she had been employed for three consecutive years and had not been notified on or before May first, 1941, that her services would not be required. But plaintiff ruled that she could not be employed as teacher because her employment would violate the Nepotism Act, sections 456.1 to 456.3, Revised Codes; she did not appeal to the state superintendent of public instruction from his ruling, but taught her children and claims pay for her services as teacher. In the summer of 1941 the trustees had one of the district's school houses moved to the Amundson ranch at an expense to the district of $112; at a special meeting of the board, held by the two trustees on March 6, 1942, according to minutes written by Florence Amundson as clerk, it was decided that an election should be held on March 19th to authorize the sale of the school building to save the renewal of fire insurance, and the three Amundsons were appointed judges of election. Sophus Amundson moved out of the district and the county on about the 12th of March; at the election Nels and Florence Amundson were the only voters, and voted unanimously to authorize the sale; thereafter Nels Amundson, acting as sole trustee, sold the building to his wife, Florence, who was still the clerk of the district, for $75, and she tendered that sum to the county treasurer and claimed the school house as her own property.

In their briefs the defendants strenuously contended that the sale of the building was valid, but upon oral argument they abandoned that contention, and we need not therefore consider it. The first question to be considered is whether, after the departure of Sophus Amundson about March 12, 1942, Nels Amundson, as the sole remaining trustee, and Florence Amundson, as clerk, had authority to conduct the affairs of the district. Since the board of trustees of a third-class school district consists of three trustees (secs. 986 and 1021, Rev. Codes), and a majority is required for a quorum (sec. 1007, Rev. Codes), it is

298

apparent that Nels Amundson, the only trustee purporting to act as such after the departure of his brother from the district, had no power to perform any valid official action on behalf of the district, and that without reference to the Nepotism Act his wife Florence had no authority as clerk of the district to give effect to any of his actions.

The final question is whether Florence Amundson was re- employed in 1941 as a teacher by the inaction of the two trustees, her husband and brother-in-law. They could not legally have acted to employ her, since section 456.2, Revised Codes, makes it unlawful for members of any board to employ any person related to them "by consanguinity within the fourth degree, or by affinity within the second degree." Affinity means relationship by marriage. (Webster's New International Dictionary, 2d Ed.) Whatever the meaning of "affinity within the second degree" may be, it is apparent that it includes the first degree, which must mean the husband or wife. Since the vote of the husband, as well as that of the brother-in-law, would have been necessary to constitute valid action by the board, it necessarily follows that Mrs. Amundson could not legally have been employed by that board. The question then is whether, under the law, they could do by inaction, or indirectly, what they could not do directly.

A reference to section 1075, Revised Codes, quickly disposes of that question. It provides that the teacher "shall be deemed re-elected" unless given notice of her re-election or otherwise by a majority vote of the trustees prior to May first. "Deemed" has been defined as "considered," "determined," or "adjudged" (State ex rel. Sinko v. District Court, 64 Mont. 181, 208 Pac. 952), but we cannot "consider," "determine" or "adjudge," pursuant to one statute, that the board of trustees has lawfully and effectively done what is expressly made unlawful by another statute. In other words, we cannot deem under section 1075 that she has been re-elected through the inaction of the board, which under section 456.2 could not by affirmative action have re-elected her. Appellants contend that section 1075

has been construed by this court in *McBride* v. *School District,* 88 Mont. 110, 290 Pac. 252, as meaning that by the board's inaction the teacher is "automatically re-elected," regardless of other statutes or circumstances. But that section necessarily presupposes capacity to hold the position, both legally and in fact.

In the *McBride Case* there was no question of the teacher's capacity to serve, and under the facts of that case the practical effect was therefore her automatic re-election. But that is not to say that the legal meaning of the section is the teacher's automatic re-election regardless of any incapacity by reason of mental incompetence, loss of certificate to teach, loss of citizenship by conviction of crime or otherwise, the nepotism statute, or any other circumstance or law disqualifying her for service. Certainly the contract and the parties' rights under it are not governed by section 1075 to the exclusion of all other applicable laws and circumstances.

The defendants' chief argument has been directed against the right of the county superintendent to bring this action as a relator in view of the fact that he is not a taxpayer within the district. But he is by law given "the general supervision of the public schools in his county." (Sec. 955, Rev. Codes.) Under popular government, each officer of the executive branch has the duties conferred upon him by the people in the Constitution or by the legislative branch of government, which must presuppose the powers necessary to carry out those duties. Since the direct operation of the schools of each district is placed by law in the hands of its board of trustees, the general supervision of the county superintendent must necessarily be exercised over the conduct of school affairs by the board, its clerk and other employees—not, of course, to substitute his discretion for theirs, but to see that they act in accordance with the relevant statutes. Since he is under obligation to perform the duties of his office and has not the authority to do so by force, his only method is by a court proceeding if his action is resisted.

"It may be laid down as a general principle, that the limit

of the power of a public officer is the statute conferring the power, and what further power is necessarily implied in order to effectuate that which is expressly conferred.'' (*In re Farrell,* 36 Mont. 254, 92 Pac. 785, 787; 43 Am. Jur. 69, sec. 250; 46 C. J. 1031, sec. 287.)

It is well settled that ''The courts may enforce the exercise of ministerial powers through the medium of mandamus, and may restrain their improper exercise by injunction.'' (46 C. J. 1034, sec. 293.) It is also the general law that ''Public officers ordinarily need not be authorized by statute to bring suit, having implied authority to do so co-extensive with their public trusts and duties.'' (46 C. J. 1046, sec. 333.) It is the officer's duty and not his right which impels his action, and he need not, like a private citizen, show a personal interest in the controversy in order to institute a judicial action.

The judgment appealed from is affirmed.

ASSOCIATE JUSTICES ANDERSON, MORRIS and ADAIR concur.

Rehearing denied September 5, 1944.