**Sheriff Richard MACK, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CV 94–113 TUC JMR.**

United States District Court,
D. Arizona.

June 29, 1994.

Stephen P. Halbrook, Fairfax, VA and David T. Hardy, Tucson, AZ, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., Janet Napolitano, U.S. Atty., Don B. Overall, Asst. U.S. Atty., Tucson, AZ and Dennis G. Linder, Sandra M. Schraibman, Michael Sitcov, Pamela J. Eppli, Robert Van Kirk, Dept. of Justice, Civ. Div., Washington, DC, for defendant.

Grant Woods, Atty. Gen., Rebecca White Berch, Sol. Gen., Thomas J. Dennis, Asst. Atty. Gen., Phoenix, AZ, for the State of Ariz.

## ORDER & MEMORANDUM DECISION

ROLL, District Judge.

### INTRODUCTION

Pending before the Court is plaintiff Graham County Sheriff Richard Mack's complaint for injunctive and declaratory relief against the enforcement of 18 U.S.C. § 922(s), commonly referred to as the Brady Act. For the reasons set forth below, the Court finds that subsection 922(s)(2) violates the Fifth and Tenth Amendments of the United States Constitution and will enter partial judgment in favor of the plaintiff on that basis.

### The Brady Act

This lawsuit is a challenge to the constitutionality of public law 103–159, 107 Stat. 1536 (1993), codified at 18 U.S.C. § 922(s), which amends the Gun Control Act of 1968.[1] The statute, popularly known as the Brady Act, provides for a waiting period of five business days for purchases of handguns from federally-licensed gun dealers. 18 U.S.C. § 922(s)(1)(A)(ii). During that waiting period, the "chief law enforcement officer" ("CLEO") in each jurisdiction is required to "make a reasonable effort to ascertain ... whether receipt or possession [of a handgun by the prospective buyer] would be in violation of the law, including research in whatever State and local recordkeeping systems are available and in a national system designated by the Attorney General." 18 U.S.C. § 922(s)(2). The CLEO is defined as "the chief of police, the sheriff, or an equivalent officer or the designee of any such individual." 18 U.S.C. § 922(s)(8). The CLEO performs the check on the basis of a sworn statement that the prospective purchaser provides to the gun dealer and that the gun dealer in turn provides to the CLEO. The CLEO must destroy the sworn statement

---

1. Several other courts have had an opportunity to review this matter. *See Printz v. United States,* 854 F.Supp. 1503 (D.Mont.1994) (§ 922(s)(2) declared unconstitutional); *McGee v. United States,* 849 F.Supp. 1147 (S.D.Miss.1994) (§ 922(s)(2) declared unconstitutional but injunctive relief limited to sole plaintiff); *Koog v. United States,* 852 F.Supp. 1376 (W.D.Tex.1994) (constitutionality of the Act upheld).

within 20 days of the date of the transfer unless the CLEO determines that the transfer would violate the law. 18 U.S.C. § 922(s)(6)(B). If the CLEO determines that the transfer would violate the law, the CLEO must, within 20 days of a request, provide reasons to the denied purchaser for that determination. 18 U.S.C. § 922(s)(6)(C).

The Brady Act also amends the penalty provision of the existing criminal code by providing that anyone who knowingly violates its provisions shall be subject to a fine, imprisonment, or both. 18 U.S.C. § 924(a)(5). CLEOs are specifically exempted from civil liability. 18 U.S.C. § 922(s)(7). It is the position of the Department of Justice that criminal sanctions shall not attach to any CLEO who violates any provision of the Brady Act. The Act does not so indicate, however.

The interim procedure outlined above is slated to be replaced by a national instant criminal background check system to be developed and maintained by the Department of Justice within five years from the date of enactment. 18 U.S.C. § 922(t)(1). The national system will consist of a computerized database of information gathered from both federal and state criminal records and will be accessible telephonically by federally-licensed gun dealers. Once the national data bank is operational, the duties of the CLEO will cease.

Plaintiff Richard Mack is the sheriff of Graham County. As such, he is the chief law enforcement officer of that jurisdiction. Graham County is a sparsely populated rural county of 4500 square miles inhabited by 28,000 residents. The Graham County Sheriff's Office is responsible for law enforcement in the county and consists of a staff of twelve officers, including the sheriff.

Mack has been advised by the Graham County Attorney that he is to enforce the provisions of the Brady Act until a court of competent jurisdiction rules otherwise. Mack alleges that the Brady Act will require him to search nine categories of records, these categories having varying degrees of accessibility. Mack maintains that his responsibilities under state law do not include conducting the type of investigations the Act mandates, and that he does not have the personnel or funds to do so.[2] He claims that his refusal to perform the duties imposed upon him by the Brady Act would subject him to criminal penalties.

Plaintiff Mack seeks a declaration that 18 U.S.C. § 922(s) is unconstitutional as beyond the powers delegated to Congress in Article 1, § 8 of the United States Constitution, contravenes the Tenth and Thirteenth Amendments, and is unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment. Mack asks the Court to enter a permanent injunction against enforcement of the Brady Act.

■ Upon suggestion of counsel, the Court previously agreed to consolidate Mack's motion for preliminary injunction with his complaint for permanent relief. Also before the Court is defendant United States of America's motion to dismiss, which the parties have agreed may be ruled upon as well. In essence, these procedural mechanisms permit the Court to reach the merits of the case at this time. For the reasons set forth below, the Court finds section 922(s)(2), the provision of the Brady Act that requires local law enforcement officials to conduct a reasonable background search, exceeds Congress's Article I powers in violation of the Tenth Amendment. Additionally, that provision, enforceable by way of criminal sanctions, is unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment. However, the Court finds this sole offending provision to be severable from the balance of the Act, which survives judicial scrutiny.

## DISCUSSION

### *Sheriff Mack's Standing to Sue*

■ The first question posed by defendant United States of America is whether this plaintiff has standing to sue. The juris-

---

**2.** In addition to his statutory duties, Sheriff Mack is bound to obey the laws of the United States by his oath of office.

diction of the federal courts is limited by Article III, § 2 of the Constitution to adjudication of "cases or controversies." U.S. Const. art. III, § 2. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). To satisfy the core constitutional requirements for standing, a plaintiff must demonstrate that he or she has suffered, or is in imminent danger of suffering, a distinct and palpable personal injury fairly traceable to the defendant's allegedly unlawful conduct and such injury is likely to be redressed by the requested relief. *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). A citizen's belief that the government is violating the Constitution does not constitute sufficient personal injury to satisfy the Article III standing requirements. *Lujan v. Defenders of Wildlife,* — U.S. —, — —, 112 S.Ct. 2130, 2143–44, 119 L.Ed.2d 351 (1992).

■ In order to reach these claims, the Court must first determine whether the criminal penalty provisions of the Brady Act apply to Sheriff Mack. As recited above, the Brady Act amends the penalty provision of the existing criminal code by providing that "[w]hoever knowingly violates subsection (s) or (t) of section 922 shall be fined not more than $1000.00, imprisoned for not more than 1 year, or both." 18 U.S.C. § 924(a)(5). Focusing on the word "whoever," the Court finds that Mack is unequivocally at risk of criminal sanctions should he decide to disobey the statute.

■ The United States disputes this interpretation and cites a Bureau of Alcohol Tobacco and Firearm's "Open Letter" to state and local law enforcement officials explaining the operation of the Brady Act. The Bureau of Alcohol, Tobacco, and Firearms is the federal agency responsible for implementing the Act. The Bureau interprets the mandatory provisions of the Act as merely requiring "some minimal effort to check commonly available records." Moreover, the letter states that it will be left to the discretion of the CLEO to establish enforcement standards based upon the jurisdiction's resources which, depending on the area, could entirely negate the research obligation. The Assistant Attorney General for the Office of Legal Counsel has officially opined that the penalties section of the Act do not apply to chief law enforcement officers.

An agency's interpretation of a statute it administers is entitled to deference only when the statute is silent or ambiguous on the issue presented.[3] In determining whether Congress has "an intention on the precise question at issue," this Court employs "traditional tools of statutory construction." *Chevron, U.S.A. v. NRDC,* 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2782 n. 9, 81 L.Ed.2d 694 (1984). In so doing, however, it should be emphasized that courts are the final authorities on issues of statutory construction. *INS v. Cardoza–Fonseca,* 480 U.S. 421, 447, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987); *Natural Resources Defense Council, Inc. v. Hodel,* 819 F.2d 927, 929 (9th Cir.1987). Moreover, it is "unclear whether an agency's interpretation of a *criminal* statute is entitled to deference under *Chevron.*" *United States v. Douglas,* 974 F.2d 1046, 1048 n. 1 (1992) (emphasis in original).

It is basic that "as long as the statutory scheme is coherent and consistent, there is generally no need for a court to inquire beyond the plain language of the statute." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1029–31, 103 L.Ed.2d 290 (1989). The relevant provision of the Brady Act imposes liability upon those who knowingly violate its terms.[4] Al-

---

**3.** As the Supreme Court has explained:

First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.... if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
*Chevron, U.S.A. v. NRDC,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

**4.** Again, CLEOs are specifically exempted from civil liability. 18 U.S.C. § 922(s)(7). It is apparent from this exemption that Congress consid-

though the term "whoever" is not defined under the statute, it does not demand further articulation.[5]

Under the plain meaning of the statute, Mack is under threat of criminal penalties and thus possesses an injury that can be redressed. The agency's interpretation to the contrary is entitled to no deference.[6]

The United States asks the Court to additionally consider whether Mack is entitled to bring suit in his official capacity, assuming that he can allege no injury as a private entity. See Karcher v. May, 484 U.S. 72, 78, 108 S.Ct. 388, 391, 98 L.Ed.2d 327 (1987) (appellant state legislators who participated in lawsuit in their official capacities lacked standing to appeal on behalf of legislature when term of office expired); Bender v. Williamsport Area School District, 475 U.S. 534, 544, 106 S.Ct. 1326, 1333, 89 L.Ed.2d 501 (1986) (plaintiff school board member had "no personal stake in the outcome of the litigation" and therefore did not have standing to file a notice of appeal). Mack's duties under state law are set out in A.R.S. § 11–441.[7] Mack has additional practical responsibilities that ensue from his management of his staff and office. Mack has sworn under oath to uphold his duties as sheriff. He has

brought this lawsuit identifying himself as the Sheriff of Graham County. The county board has not authorized this suit and the County Attorney has informed Mack that he is not to use county facilities, staff, services or equipment in pursuit of the litigation. Mack has retained private counsel to represent him.

■ The Court finds that there is no difference between Sheriff Mack's personal and official capacities for purposes of the duties imposed upon him by the Brady Act. The Act directs the CLEO as a county agent to perform its statutory mandates. Mack is thus forced to choose between violating his oath or violating the Act, subjecting himself to possible sanctions. Mack has a sufficient stake in the outcome of the proceedings to justify standing, regardless of whether it is characterized as private or official conduct. See Board of Education v. Allen, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968) (plaintiffs' belief that statute forced them to choose between following oath and statute supplied personal stake necessary for standing).

■ The United States raises one final point—namely, its theory that Arizona law

---

ered the extent to which it wished to hold a CLEO responsible for enforcement. It is difficult to conclude that Congress meant to preclude criminal liability simply because civil liability has been removed.

5. Assuming for the sake of argument that the term lacks clarity, several interlocking principles guide this Court's construction to the identical result. First, a statute must be construed, if fairly possible, to avoid constitutional problems. Communication Workers of America v. Beck, 487 U.S. 735, 762, 108 S.Ct. 2641, 2657, 101 L.Ed.2d 634 (1988). If ambiguous, the more lenient construction in favor of a criminal defendant is required. United States v. Baxley, 982 F.2d 1265, 1270 (9th Cir.1992). It is only if the language is unclear that the Court need refer to legislative history as an aid to statutory interpretation. Blum v. Stenson, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984).

6. At oral argument, counsel for the government cited 28 C.F.R. § 0.25 for the proposition that CLEOs would be sheltered from subsequent prosecutions based on the opinion letter even if the interpretation were later to change. The regulation, however, offers Sheriff Mack no such reassurances.

7. § 11–441(A) defines a sheriff's powers and duties provides in relevant part as follows:

A. The sheriff shall:
1. Preserve the peace.
2. Arrest and take before the nearest magistrate for examination all persons who attempt to commit or who have committed a public offense.
3. Prevent and suppress all affrays, breaches of the peace, riots and insurrections which may come to the knowledge of the sheriff.
4. Attend all courts, except justice and police courts, when an element of danger is anticipated and attendance is requested by the presiding judge, and obey lawful orders and directions issued by the judge.
5. Take charge of and keep the county jail, including a county jail under the jurisdiction of a county jail district, and the prisoners therein.
6. Endorse upon all process and notices the year, month, day, hour and minute of reception, and issue to the person delivering it, on payment of fees, a certificate showing the names of the parties, title of paper and time of reception.
7. Serve process and notices in the manner prescribed by law. . . .

does not authorize its sheriffs to sue or be sued. Fed.R.Civ.P. 17(b) provides that the capacity to sue must be determined by state law. Pursuant to statute, the office of sheriff is named a county officer. A.R.S. § 11–401. The powers of the county to sue and be sued "shall be exercised only by the board of supervisors or by agents and officers acting under its authority and authority of law." A.R.S. § 11–201. Mack lists several early cases for the simple proposition that Arizona sheriffs regularly sue and are sued. This is hardly dispositive as "capacity to sue is not jurisdictional and can be waived." *Gonzales v. Arizona Public Service Co.,* 161 Ariz. 84, 87, 775 P.2d 1148, 1151 (App.1989).

Thus far, it would appear that Arizona courts have not had an opportunity to determine the extent of a sheriff's capacity to sue. The Supreme Court of West Virginia, when faced with a similar issue, ruled that "the capacity to sue is an important incident to the duties of public officers and it is often necessary. that such an official be able to ensure that he [or she] is acting properly by seeking court guidance." *State ex rel. Manchin v. Lively,* 170 W.Va. 672, 674, 295 S.E.2d 912, 915 (1982). That court cited with approval the following language found in 67 C.J.S. *Officers* § 250 (1978): "public officers have capacity to sue commensurate with their public trust or duties without express statutory authority." *Id.* See also State ex rel Hoagland v. School Dist. No. 13, 116 Mont. 294, 151 P.2d 168 (1944) (implying right to sue into statute defining county superintendent's duties). This Court concurs in that reasoning.

The government's argument was recently rejected in *McGee v. United States,* 849 F.Supp. 1147 (S.D.Miss.1994). There, the District Court for the Southern District of Mississippi stated:

> The cases are clear that the appropriate body to bring an action involving counties is the board of supervisors of such county. However, that is not the situation before this Court. Brady directs sheriffs (as chief law enforcement officers) to ascertain if obtaining a gun is in violation of the law, including checking whatever records are available.... This directive is not to the

county. It is not to the attorney general. It is not any other state agency or to any federal agency.

*McGee,* 849 F.Supp. at 1149. Nor, it might be added, will the consequences of violating the Act be borne by anyone other than the CLEO.

The Court finds the standing and jurisdiction arguments presented by the United States to fall on all fronts. It is irrefutable that the Act specifically imposes certain duties on a particular category of individuals—the CLEOs. Sheriff Mack is a CLEO for purposes of this statute. Should Sheriff Mack disregard his statutory responsibilities, he would place himself at risk of its criminal penalties. Thus, Sheriff Mack has standing to challenge the statute on Fifth Amendment grounds because of the potential sanctions he faces. Moreover, Sheriff Mack has standing to raise a Tenth Amendment claim because of his position as the state official to whom Congress has delegated the obligation to enforce federal law.

### Commerce Clause and Tenth Amendment

Count One of Mack's Amended Complaint alleges that Congress has exceeded the scope of its powers under the Commerce Clause by legislating the requirement that he perform a background check on potential firearms purchasers. The flip side of this argument is Count Two of Mack's Amended Complaint, which contends that the Act's enforcement scheme infringes upon the state's sovereign powers reserved to it by the Tenth Amendment. As the Supreme Court noted, these inquiries go hand in hand. *New York v. United States,* — U.S. —, —, 112 S.Ct. 2408, 2417, 120 L.Ed.2d 120 (1992). "If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States; if a power is an attribute of state sovereignty reserved by the Tenth Amendment, it is necessarily a power the Constitution has not conferred on Congress." *Id.* "In the end, just as a cup may be half empty or half full, it makes no difference whether one views the question at issue in this case as one of ascertaining the limits of the power delegated to the Federal Government under

the affirmative provisions of the Constitution or one of discerning the core of sovereignty retained by the States under the Tenth Amendment." *Id.*, 112 S.Ct. at 2419.

Turning first to Count One, legislation enacted under the Commerce Clause has a "presumption of constitutionality," *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976), and receives "a highly deferential" judicial review. *United States v. Edwards*, 13 F.3d 291, 293 (9th Cir.1993). "A court may invalidate legislation enacted under the Commerce Clause only if it is clear that there is no rational basis for a congressional finding that the regulated activity affects interstate commerce, or that there is no reasonable connection between the regulatory means selected and the asserted ends." *FERC v. Mississippi*, 456 U.S. 742, 754, 102 S.Ct. 2126, 2134, 72 L.Ed.2d 532 (1982) (internal citations and quotations omitted).

Applying these principles to the facts at hand, it is clear that the activity regulated by the Brady Act, the purchase of handguns, affects interstate commerce. This is not even a debatable question. *See Huddleston v. United States*, 415 U.S. 814, 833, 94 S.Ct. 1262, 1273, 39 L.Ed.2d 782 (1974) (Congress is permitted to regulate intrastate redemption of firearms from pawnshops on the basis that such transactions affect interstate commerce); *Edwards*, 13 F.3d at 293 (Gun Free School Zones Act, prohibiting possession of firearms within 1,000 feet of a school, represents permissible exercise of Congressional power); *United States v. Evans*, 928 F.2d 858 (9th Cir.1991) (the violence created through the possession of firearms adversely affects the national economy and therefore comes within the scope of Congressional authority).

The second prong of the analysis requires the Court to determine whether there is a rational connection between the background check requirement and the regulation of the transfer of handguns. The purpose of the investigation is to determine if a potential purchaser is legally entitled to possess a firearm. 18 U.S.C. § 922(g). *See also* U.S. Const. art. I, § 8, cl. 18 (granting Congress the power "[t]o make all Laws which shall be necessary and proper for carrying into Execution" its delegated powers).

The issue is not, however, whether Congress possesses the raw power to regulate the transfer of handguns. Clearly it does. The thorny question is whether the Tenth Amendment limits the power of Congress to regulate in the way it has chosen. The district court for the District of Montana framed the inquiry as follows: "This case turns on the proper relationship between the federal government and the several states, and in particular, on the constitutionality of federally imposed, unfunded mandates to the states." *Printz v. United States*, 854 F.Supp. 1503, 1506–1507 (D.Mont.1994). The Tenth Amendment confirms that the federal government has fixed powers. U.S. Const. amend. X (the "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."). "[A]ll is retained which has not been surrendered." *New York*, —— U.S. at ——, 112 S.Ct. at 2418 (quoting *United States v. Darby*, 312 U.S. 100, 124, 61 S.Ct. 451, 462, 85 L.Ed. 609 (1941)).

In *New York v. United States*, the Supreme Court reviewed the history of the decisional law construing the delicate balance struck between the federalist compromise and a state's authority. The Supreme Court stated without hesitation that "[w]here a federal interest is sufficiently strong to cause Congress to legislate, it must do so directly; it may not conscript state governments as its agents." *Id.*, —— U.S. at ——, 112 S.Ct. at 2429. *Compare FERC v. Mississippi*, 456 U.S. at 762, 102 S.Ct. at 2139 (federal government may enlist the judicial branch of state government to further federal ends). The *New York* Court held that the federal government could not force the state of New York to regulate nuclear waste in a certain way because in doing so, Congress exceeded its Article I powers. The statute offered state governments the choice of either regulating pursuant to Congressional dictates or accepting ownership of low level radioactive waste. Justice O'Connor, writing for the majority, held the statute invalid under the

Commerce Clause and the Tenth Amendment because it " 'commandeers the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program.' " *New York,* —— U.S. at ——, 112 S.Ct. at 2428 (quoting *Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.,* 452 U.S. 264, 288, 101 S.Ct. 2352, 2366, 69 L.Ed.2d 1 (1981)).

The parties present two very different views of the Brady Act. The government maintains that the Act's provisions are discretionary, cooperative, and clerical. The government goes so far as to say that were Sheriff Mack to find in his discretion and under the circumstances that a reasonable effort meant no investigation whatsoever, that would be acceptable compliance.[8] For his part, Mack interprets the Act to be a direct command from Congress. Such a command would clearly involve the type of government conduct found to be unconstitutional in *New York v. United States,* —— U.S. at ——, 112 S.Ct. at 2425.

Relying upon *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), the government first maintains that the Brady Act is a statute of general applicability and thus does not intrude upon the special preserve of state sovereignty. At issue in *Garcia* was whether Congress had exceeded its powers by requiring the states to comply with the Fair Labor Standards Act minimum wage and overtime requirements. In that case, the Supreme Court found that the state "face[d] nothing more than the same ... obligations that hundreds of thousands of other employers, public as well as private, have to meet." *Garcia,* 469 U.S. at 554, 105 S.Ct. at 1019. Under *Garcia,* if states object to complying with the FLSA, their recourse is to the political process of state participation in federal government action.[9] *Id.* at 556, 105 S.Ct. at 1020.

The government's efforts to characterize the Brady Act as a law of general applicability are disingenuous. The specific dictates imposed upon state law enforcement personnel comprises the crux of this lawsuit. These duties are not generally applicable but specially meted out to the CLEOs. Unlike the identical responsibilities imposed upon government and private employers under the FLSA, private entities have no corresponding duties under the Brady Act.

Next, the government dismisses the holding in *New York* as one affecting only those federal laws which attempt to compel a state to legislate. Without doubt, the Supreme Court found the prospect of compelled legislation to be constitutionally objectionable. The reason for this principle, the Supreme Court explained, is that "where the Federal Government compels States to regulate, the accountability of both state and federal officials is diminished." *New York,* —— U.S. at ——, 112 S.Ct. at 2424. That loss of accountability, the Court concluded, undermines the purpose of federalism—to ensure that the interests of the citizens are adequately represented. *Id.,* 112 S.Ct. at 2431–32.

The government claims that the Brady Act does not usurp accountability from the states because the Act does not require, much less compel, the state legislature to do anything. *FERC v. Mississippi,* 456 U.S. at 764, 102 S.Ct. at 2140 (Public Utility Regulatory Policies Act of 1978 held constitutional because did not contain a federal command to promulgate and enforce regulations but merely required the states to consider federal standards); *Hodel,* 452 U.S. at 288, 101 S.Ct. at 2366 (Supreme Court upheld Surface Mining Control and Reclamation Act of 1977 because "the States are not compelled to enforce the steep-slope standards, to expend any state

---

**8.** The government claims that the mandated actions are *de minimis* and therefore escape constitutional review. This position was accepted by the district court in *Koog v. United States,* 852 F.Supp. 1376 (W.D.Tex.1994).

**9.** Prior to *Garcia,* the FLSA was not applicable to the states when they were performing traditional governmental functions. *National League of Cit-*

*ies v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). The *Garcia* Court rejected *National League of Cities's* "traditional government functions" test. *Garcia,* 469 U.S. at 556–57, 105 S.Ct. at 1020–21. Thus, the government's argument to the contrary herein does not merit further comment.

funds, or to participate in the federal regulatory program in any manner whatsoever.").

True, the Brady Act does not require the state to legislate in order to enforce its provisions. In this respect, however, it is more like the "take title" section of the unconstitutional statute in *New York* which essentially operated upon default. This provision was found to be constitutionally defective even though no affirmative action was demanded of the state. In this case, the state is forced to expend time and resources toward implementation of the Act, even though legislation is not mandated.[10]

Finally, the government claims that the Tenth Amendment is not violated by a congressional order that a state implement a federal directive where doing so is exactly the type of activity the state ordinarily engages in. The government offers *Testa v. Katt,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947), in support of this proposition. *Testa* involved the state of Rhode Island's refusal to permit lawsuits to be filed in its courts under federal price control legislation which conferred dual jurisdiction upon state and federal courts. The Supreme Court held that Rhode Island could not refuse jurisdiction over federal claims to be adjudicated in its courts. *Testa,* 330 U.S. at 394, 67 S.Ct. at 814. In evaluating the applicability of *Testa,* the *New York* Court declared that *Testa* was grounded upon the Supremacy Clause rather than the Tenth Amendment. *New York,* —— U.S. at ——–——, 112 S.Ct. at 2429–30. *Accord FERC v. Mississippi, supra* (Mississippi Public Service Commission had jurisdiction to entertain claims arising out of Public Utility Regulatory Policies Act of 1978). *Testa* is not controlling here.

In summary, the Brady Act's provision mandating that state law enforcement officials perform a background investigation exceeds Congressional powers under the Commerce Clause, thereby violating the Tenth Amendment.

### Fifth Amendment Vagueness Claim

 Mack also challenges the Brady Act as unconstitutionally vague in violation of the Fifth Amendment Due Process Clause because it fails to make explicit, under threat of criminal punishment, the reasonable effort required when determining whether receipt or possession of a handgun would be in violation of the law. A statute is unconstitutionally vague if it threatens sanctions without giving fair warning of the conduct that is proscribed or demanded. *Grayned v. Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–2300, 33 L.Ed.2d 222 (1972). " '[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited.' " *United States v. Dischner,* 974 F.2d 1502, 1510 (9th Cir.1992) (quoting *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1290, 122 L.Ed.2d 682 (1993).

The United States maintains that Sheriff Mack lacks standing to pursue this claim in light of the Office of Legal Counsel's opinion letter proclaiming that the criminal sanctions of the Act were not meant to apply to CLEOs. Because the protection afforded Sheriff Mack by the opinion letter is illusory,[11] Sheriff Mack is entitled to have the Court decide the merits of this claim. Accordingly, the Court concludes that the mandatory provisions of the statute must fall for vagueness.

The Act requires that Sheriff Mack make a "reasonable effort" to perform a background check within five business days, including research in a national system of records designated by the Attorney General as well as any "available" state and local records. 18 U.S.C. § 922(s)(2). Reasonable effort is not defined by statute.

The United States offers one definition to complete the void. It insists that Sheriff Mack is not under a mandatory obligation to determine the legality of handgun transfers. The government's interpretation of the en-

---

10. For instance, the CLEO must address the reasons for ineligibility and destroy the sworn statement.

11. *See supra* note 6 and accompanying text.

forcement provisions merely directs the CLEO to determine whether, in light of the resources available in the specific jurisdiction, it would be reasonable to conduct a background check after notice of the proposed sale by a licensed gun seller. The government claims the Act would allow ever changing obligations, as appropriate, in light of individual circumstances. At various times and through various agencies, the government has posited that criminal sanctions do not apply to CLEOs or that criminal sanctions may apply, but only if the CLEO fails to expend "minimal efforts" in pursuit of his or her investigatory duties.

The government's position is untenable. When the language of a criminal statute is clear, as is true of 18 U.S.C. § 922(s), the executive branch is not at liberty to amend that statute by fiat. Accordingly, the Court finds that Sheriff Mack faces criminal sanctions should he violate the Brady Act's mandatory provisions, but the statutory duty imposed upon him as the CLEO of Graham County is imprecise and indefinite. This runs afoul of the Fifth Amendment Due Process Clause.

### Thirteenth Amendment Challenge

■ Mack next contests the Brady Act on the ground that its enforcement provisions constitute involuntary servitude prohibited by the Thirteenth Amendment. Involuntary servitude in violation of the Thirteenth Amendment "occurs when an individual coerces another into ... service by improper or wrongful conduct that is intended to cause, and does cause, the other person to believe that he or she has no alternative but to perform the labor." *Brogan v. San Mateo County*, 901 F.2d 762, 764 (9th Cir.1990) (quoting *United States v. Mussry*, 726 F.2d 1448, 1453 (9th Cir.), *cert. denied*, 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984)).

In *United States v. Kozminski*, 487 U.S. 931, 108 S.Ct. 2751, 101 L.Ed.2d 788 (1988), the Supreme Court found that a conviction for violating a statute enacted to enforce the Thirteenth Amendment required proof that the alleged victims were "forced to work for the defendant by the use or threat of physical restraint or physical injury" or by law,

rather than merely by psychological coercion. *Kozminski*, 487 U.S. at 952, 108 S.Ct. at 2764. Where as here a person is free to refuse to work without incurring legal sanctions, the Thirteenth Amendment is not violated, even if the choice is a painful one. Mack need only quit his job to be free of the duties imposed upon him by the Act. Under these circumstances, the Thirteenth Amendment is not implicated. *Id.* at 950, 108 S.Ct. at 2763 (quoting *United States v. Shackney*, 333 F.2d 475, 487 (2d Cir.1964)).

### Severability of Offending Provisions

■ A statute that is partially unconstitutional may require the Court to invalidate the statute in its entirety. Mack maintains that the unconstitutional provisions of § 922(s) are "the heart and foundation of that entire subsection" and the illegality of the part infects the legality of the whole. "Unless it is evident that" Congress would not have enacted the constitutional provisions in a statute independently of any unconstitutional ones, "the invalid part may be dropped if what is left is fully operative as a law." *New York*, —— U.S. at ——, 112 S.Ct. at 2434 (citations omitted). Mack interprets both the statutory text and its legislative history to mean that the statute would not have been enacted absent the enforcement duties placed upon the CLEOs. Thus, he claims, the subsections under review are not severable and if even one subsection is unconstitutional the entire act must be rejected.

The Gun Control Act, of which the Brady Act is a part, does in fact contain a severability clause. Section 928 reads: "If any provision of this chapter ... is held invalid, the remainder of the chapter ... shall not be affected thereby." 18 U.S.C. § 928. If a statute includes a severability clause, there is a presumption that any of its provisions found to be unconstitutional are severable. *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686, 107 S.Ct. 1476, 1481, 94 L.Ed.2d 661 (1987). *See Board of Natural Resources v. Brown*, 992 F.2d 937, 948 (9th Cir.1993) (the absence of a severability clause "does suggest an intent to have all components operate together or not at all.").

The Supreme Court in *Alaska Airlines* expressed some doubt as to whether the severability clause contained within the Federal Aviation Act of 1958 applied to the Airline Deregulation Act of 1978, the provision under review. *Alaska Airlines*, 480 U.S. at 686 n. 8, 107 S.Ct. at 1481 n. 8. As the Supreme Court explained, the Airline Deregulation Act did not truly amend the Federal Aviation Act, but created a whole new program. *Id.* That concern does not apply here. In contrast, the Brady Act does amend the underlying Gun Control Act. Rather than create an entire new program, the Brady Act simply provides a means for implementing the Gun Control Act's prohibition against sales to certain classes of buyers.

Even without applying the severability clause, the offending provision could be separated without doing damage to the entire Brady Act. An invalid provision is severable if the balance of the legislation is capable of functioning independently from the invalid provision, and the statute functions, in the absence of the objectionable provision, "in a *manner* consistent with the intent of Congress." *Id.* at 684–85, 107 S.Ct. at 1479–81 (emphasis in original).

Accurately gauging the most vulnerable aspect of the Brady Act, the government is hopeful that the Court will limit its redaction to section 922(s)(2), the provision requiring local law enforcement officials to conduct a reasonable background search.[12] This proposal would leave intact the five-day waiting period, the information and notification duties imposed on gun importers, dealers, and manufacturers, and the *option* for local officials to conduct a background check.

When considered absent the offending subsection, the statute loses none of its function. The test is whether the elimination "alters the substantive reach of the statute and leaves completely unchanged its basic operation." *Board of Natural Resources*, 992 F.2d at 948 (citations omitted). Irrefutably the balance of the interim provisions can function independent of the alleged invalid provision. Gun sales can be postponed for five days and sworn statements can be forwarded to CLEOs, regardless of whether CLEOs perform any of the three acts described in the challenged provisions.

The Court must next decide whether the offending portion is necessary for the remainder of the Act to function "in a manner consistent with the intent of Congress." The presence of the severability clause is again evidence that Congress intended for the statute to have continued viability, even though partially invalidated.

Mack disagrees, and argues that the bill was a product of a negotiated compromise which Congress would not have adopted but for its many parts. For instance, Mack refers the Court to the destruction requirement, which prevents the inadvertent creation of a registration system, to have been critical to the successful passage of the bill. At bottom, Mack has not overcome the presumption in favor of severability and the Court can safely excise the offending provision.

By invalidating the mandatory background check provision, the requirements of the other challenged provisions become optional. For instance, 18 U.S.C. § 922(s)(6)(C), which requires the CLEO to provide reasons to the denied purchaser for that determination, becomes elective depending on whether the state chooses to perform background checks. Similarly, 18 U.S.C. § 922(s)(6)(B), which orders the CLEO to destroy the sworn statement within 20 days of the date of the transfer again will depend upon the state's voluntary decision to perform the background check. When viewed accordingly, the remaining provisions do not commandeer the states in any way and are therefore constitutional.

## ORDER

The Court finds that in enacting section 18 U.S.C. 922(s)(2), Congress exceeded its authority under Article 1, section 8 of the United States Constitution, thereby impermissibly encroaching upon the powers retained by

12. Mack's constitutional challenge encompasses three of the interim provisions of the Act, namely, the requirements that the CLEO conduct a background check, destroy sworn statements of purchasers after 20 days, and inform rejected purchasers of the reasons for the denial.

the states pursuant to the Tenth Amendment. The Court further finds that the provision, in conjunction with the criminal sanctions its violation would engender, is unconstitutionally vague under the Fifth Amendment of the United States Constitution.

Accordingly, **IT IS HEREBY ORDERED** that plaintiff Sheriff Richard Mack's complaint for declaratory and injunctive relief is **GRANTED IN PART.** The Clerk of the Court is directed to enter a judgment declaring 18 U.S.C. § 922(s)(2) to be unconstitutional. **IT IS FURTHER ORDERED** that defendant United States of America and its agents are **PERMANENTLY ENJOINED** from further enforcing 18 U.S.C. § 922(s)(2).

All other provisions under review are deemed severable from the offending subsection and are found not to violate the United States Constitution.

**IT IS FURTHER ORDERED** that all pending motions are deemed **MOOT** by virtue of this order and this case is **DISMISSED.**