**Brian ROY, Sheriff of Marshall County, Kentucky, et al., Plaintiffs,**

v.

**KENTUCKY STATE POLICE, Commonwealth of Kentucky, et al., Defendants.**

**Civ. A. No. C94–0050–P(H).**

United States District Court, W.D. Kentucky, at Paducah.

March 31, 1995.

Kerry B. Harvey, Owen, Harvey & Carter, Benton, KY, for plaintiffs.

Lucy B. Richardson, Kentucky Justice Cabinet, Frankfort, KY, for defendants.

## MEMORANDUM OPINION

HEYBURN, District Judge.

Plaintiffs brought this action seeking a declaration of the rights and obligations of local law enforcement officers pursuant to the Brady Handgun Violence Prevention Act ("Brady Act") and injunctive relief prohibiting the Kentucky State Police ("KSP") from conducting Brady Act background checks. Plaintiffs, the Sheriffs of Marshall, Daviess, Calloway, and Ballard Counties in Kentucky, and a federally licensed firearms dealer, contend that Congress intended sheriffs, not the state police, to be the "chief law enforcement officers" ("CLEOs") for the purpose of conducting criminal background checks on prospective firearms purchasers. Consequently, as further relief, each sheriff Plaintiff asks the Court to designate him as the CLEO within his jurisdiction to perform Brady Act responsibilities.

Because Congress neither clearly defined who has the responsibility to perform this important public service nor established an administrative process for doing so, the courts, in this instance with the assistance of fine counsel on both sides, are left to sort out the unusual competing claims. For the reasons set forth herein, Plaintiffs' specific request for declaratory and injunctive relief is sustained in part.

I.

The Brady Act amends and supplements the Gun Control Act of 1968, which regulates the distribution of firearms by private persons. The statute requires that any person dealing in firearms must first obtain a federal license. 18 U.S.C. § 922(a). A licensee may not lawfully transfer a firearm to any

person whom he knows or should know (1) is under indictment for, or has been convicted of, a felony; (2) is a fugitive from justice; (3) is an illegal user of controlled substances; (4) is an illegal alien; (5) has been dishonorably discharged from the military; (6) has renounced U.S. citizenship; or (7) is or has been adjudicated mentally defective. 18 U.S.C. § 922(d).

The Brady Act enforces these restrictions by imposing a five-day waiting period on transactions so that the authorities can conduct a criminal background check on prospective gun purchasers. Federally licensed gun dealers must require prospective purchasers to complete a certification form, which contains certain personal information including the applicant's name, date of birth, address, and an averment that the applicant is not barred from owning a firearm. Within one day after the form is completed, the dealer must transmit a copy of the form and its contents to the CLEO of the purchaser's place of residence. 18 U.S.C. § 922(s)(1)(A)(i)(III)–(IV). Upon receipt of the notice, the CLEO must investigate the criminal background of the prospective buyer. In the words of the statute, the CLEO "shall make a reasonable effort to ascertain within 5 business days whether receipt or possession would be in violation of the law, including research in whatever State and local recordkeeping systems are available and in a national system designated by the Attorney General." 18 U.S.C. § 922(s)(2).[1] A sale may be completed only after five days, or after the CLEO notifies the seller that the purchase is not unlawful, whichever occurs sooner.

Congress defined the term "chief law enforcement officer" as "the chief of police, the sheriff, or an equivalent officer or the designee of such individual." 18 U.S.C. § 922(s)(8). Thus, Congress did not designate a CLEO in the definition, but rather inserted examples, without clarifying which, if any, of the named authorities is preferred. Furthermore, Congress established no administrative process for choosing *the* checking authority.

As the effective date of the legislation approached,[2] the Bureau of Alcohol, Tobacco and Firearms ("ATF") sent an "Open Letter to State and Local Law Enforcement Officials," suggesting that law enforcement officials meet and agree which agency shall serve as CLEO in their particular jurisdiction. ATF Open Letter, January 21, 1994, at 8. ATF interpreted the Brady Act as broad enough to give federal firearms licensees more than one official to contact in many cases, and concluded that Congress envisioned agreement among the law enforcement agencies involved as a method of choosing the CLEO. *Id.* at 7–8. ATF's Open Letter was sent to state and local authorities in Kentucky, including KSP and all county sheriffs.

On February 24, 1994, KSP sent to all local law enforcement authorities a teletype, which stated that "KSP has been designated the chief law enforcement officer for the administration of the Brady Bill ...."[3] KSP also informed federal firearms licensees in the state of its status as CLEO. Since then, KSP has performed satisfactorily the background checks and provided appropriate notification to firearms licensees. KSP has as-

---

1. The statutory provisions at issue in this case are interim provisions which involve the CLEO in the determination of whether the law prohibits the transfer of a firearm to a particular prospective buyer. The Brady Act provides for the eventual establishment of a national instant criminal background check system that licensed dealers themselves can contact before selling any firearm. 18 U.S.C. § 922(t)(1). When the national system becomes operational, not later than 1999, the CLEO will no longer be involved in implementing Brady's background check requirements.

2. The Brady Act requirements became mandatory and effective on February 28, 1994.

3. The Court finds no evidence of such a designation. The Kentucky Legislature did pass H.B. 390, which the governor signed on April 11, 1994. The Legislature had no authority to appoint the CLEO and, in any event, H.B. 390 did not make such an appointment. The legislation, now codified as KRS 431.000, provided a method of directing fees to the Kentucky Justice Cabinet in connection with anticipated Brady Act responsibilities. Nothing in this Court's decision is intended to suggest or imply that Plaintiffs have a right to receive any of the funds collected by the Justice Cabinet under KRS 431.000.

sumed this responsibility to the apparent chagrin of at least four county sheriffs, who assert that KSP has usurped their right as CLEO to implement the Brady Act. Congress probably never imagined that two groups might actually vie for the right to perform this public service, but that is precisely the claim presented.[4]

## II.

Given the unusual circumstances of this action, the Court has the duty to interpret the ambiguous statutory language in a manner that best expresses congressional intent. Congress defined CLEO as "the chief of police, the sheriff, or the equivalent officer or the designee of such individual." Any mention of the state police is noticeably absent from the list of examples that comprise the definition of CLEO. Plaintiffs argue that because the plain language of the statute specifically mentions the sheriff and not the state police and because the statute mentions two local law enforcement agencies and not state agencies, Congress did not intend KSP to be a CLEO. The Court does not draw quite so broad a conclusion.

The state police are specifically named in other provisions of the Brady Act. For example, the Act requires federal licensees to forward reports of multiple handgun sales to "the department of State police or State law enforcement agency . . . or local law enforcement agency of the local jurisdiction in which the sale or other disposition took place . . ." 18 U.S.C. § 923(g)(3)(A). Another provision also specifies the state police along with local

agencies when discussing the nondisclosure requirements for Brady forms. 18 U.S.C. § 923(g)(3)(B). These provisions indicate that when Congress intended to impose duties that could be fulfilled by either state or local law enforcement officials, it did so explicitly. *Frank v. U.S.*, 860 F.Supp. 1030, 1036–37 (D.Vt.1994). Thus, Congress intended certainly that local officials conduct Brady Act checks where appropriate.

Moreover, Congress' exclusion of the state police in the definition of CLEO, combined with Congress' specific inclusion of the state police in other Brady Act provisions, persuades the Court that Congress did not intend state police *by status* to be CLEO. Congress, however, did not intend to define CLEO solely by *status*. State police may still be the appropriate CLEO in a particular locale when its capabilities and responsibilities are compared to other agencies. In other words, KSP may be an "equivalent officer" or the "designee" of a sheriff, chief of police.[5]

The KSP argue that they constitute an "equivalent officer" because they have the same powers with respect to criminal matters and enforcement of the laws as sheriffs in their respective jurisdictions. KRS 16.060. In fact, KSP has more extensive law enforcement responsibilities than sheriffs. KSP's duties focus more exclusively on law enforcement, whereas the local sheriff performs a variety of law enforcement related tasks, often in a subsidiary role to the local

---

**4.** In most challenges to the Brady Act, law enforcement officials have attacked the imposition of federally mandated duties on local officials. Other district courts have held that the Brady Act's mandatory background check provision commandeers local officials for federal purposes in violation of the Tenth Amendment. *See Frank v. U.S.*, 860 F.Supp. 1030 (D.Vt.1994); *Mack v. U.S.*, 856 F.Supp. 1372 (D.Ariz.1994); *Printz v. U.S.*, 854 F.Supp. 1503 (D.Mont.1994). *See, contra, Koog v. U.S.*, 852 F.Supp. 1376 (W.D.Tex. 1994). This case does not present the issue of the constitutionality of requiring state and local law enforcement to administer a federal program. The issues raised in this case have previously been considered only indirectly as they related to standing. In any event, the identification of an appropriate CLEO in a specific jurisdiction must be a case by case determination due

to the different duties among law enforcement officials of various states.

**5.** Indeed, ATF has recognized that KSP could serve as CLEO in Kentucky by virtue of being an equivalent or designated officer, even though KSP by status does not fit into the definition's examples. As part of its effort to support the implementation of the Brady Act, ATF conducted a study of relevant state laws and attempted to determine the CLEO for Brady purposes in states subject to the waiting period provision. In a notice to federal firearms licensees dated July 22, 1994, ATF listed KSP as the CLEO for the entire state of Kentucky. 59 Fed.Reg. 37532, 37533 (1994). Interestingly, in many other states the CLEO listed by ATF varies according to the county.

police or KSP.[6]

Plaintiffs argue that KSP's broader statewide role is precisely what disqualifies KSP as an "equivalent officer." The statutory definition, through its examples, shows a preference for local law enforcement agencies as CLEO. The local agency, however, may not always be the primary or "chief" law enforcement agency in a particular locality. In many Kentucky counties, the KSP may be the most significant law enforcement agency, though certainly not the chief local officer as suggested by the Brady Act. Likewise, however, in many larger counties in the state, no one would suggest that the local sheriff is the chief law enforcement agency or its equivalent throughout the county. The reality of law enforcement in Kentucky does not convey upon any group, by virtue of its status or name alone, the right to designation as CLEO throughout the state.

Neither does the Brady Bill convey upon any single CLEO, equivalent officer, or designee the "right" to perform Brady Act responsibilities. For example, numerous Kentucky law enforcement agencies could make equal or plausible claims within a particular jurisdiction. Congress envisioned that law enforcement agencies with an interest in and the ability to perform the Brady Act requirements would meet and agree upon the CLEO in each geographic area. The Court will focus, therefore, upon the establishment of an appropriate process rather than attempt to choose among qualified law enforcement agencies where Congress has provided little guidance on how to make that choice. This process will vindicate the Brady Act's statutory preference that local law enforcement entities administer the Act's checking responsibilities.

## III.

Clearly, KSP can qualify as a CLEO under the statutory definition either as designee of

a sheriff, or chief of police, or, in some areas, as an equivalent officer, and no one can doubt that KSP is equipped to meet Brady's background check requirements. This is especially true in Kentucky, where KSP gathers local records and maintains a comprehensive criminal history information system. Plaintiffs correctly maintain, however, that no one designated KSP as CLEO. Rather, KSP declared themselves in charge of administering the Brady Act requirements. Plaintiffs made their objection known through this lawsuit, instead of through the process recommended by ATF and implicitly anticipated by Congress.

Because more than one local law enforcement agency may qualify as CLEO, the Brady Act envisions that law enforcement agencies meet to determine who should exercise the responsibilities mandated by the Brady Act. In this case, no local authorities other than Plaintiffs have indicated an intent to perform the Brady Act background checks. If, however, the chief of police of Marshall County asserted his right to be CLEO in his jurisdiction, he and the sheriff of the county may have equal bases for their claims. As ATF suggested, the most logical way to resolve this conflict is for the agencies involved to discuss and agree about who is more willing, or better suited, to perform the required functions in a particular geographic area.

The circumstances in this case are unusual because KSP has been conducting the Brady background checks since the Act became effective. The Court cannot ignore this reality as it fashions an appropriate construction and implementation of Brady. Therefore, the Court concludes that, in the absence of an objection by other local law enforcement authorities, KSP is the *de facto* CLEO designee in Kentucky for Brady Act purposes.

---

**6.** The KSP enforce the criminal, motor vehicle, and traffic laws of the state; detect and prevent crime; apprehend criminals; maintain law and order; and maintain a comprehensive criminal history information system. KRS 16.060. Sheriffs have the statutory duty to keep order in court, execute court sentences, serve process, transport prisoners, patrol roads and keep records of accidents, inspect dance halls and road-

houses, and collect state and local taxes and fines. KRS 70.140. 70.130, 70.070, 70.150, 70.160, 70.090. The inquiry, however, does not focus on which law enforcement agency is *most* qualified to conduct the background checks; rather only whether an agency is qualified by powers, jurisdiction and status in relationship to others.

The Court finds that KSP is not disqualified by status, name, or qualifications from serving as CLEO. The Court is not appointing these sheriff Plaintiffs as CLEO or granting any of them the right to serve as CLEO in a specific geographic region. The Court does find that, in the absence of an objection from other potential CLEOs, and after following the procedures set forth in the accompanying order, these sheriff Plaintiffs may replace KSP as CLEOs within their respective jurisdictions by withdrawing the *de facto* designation of KSP. This remedy and the accompanying order apply solely to these named Plaintiffs.

The Court is entering an Order consistent with this Opinion, which specifies the actions that the sheriff Plaintiffs must undertake prior to serving as CLEOs in KSP's stead.

### ORDER

For the reasons explained in the attached Memorandum Opinion,

IT IS HEREBY ORDERED that Plaintiffs' claims for injunctive and declaratory relief are SUSTAINED in part as follows:

(a) Plaintiffs' request that Defendants be enjoined from performing Brady Act Chief Law Enforcement Officer ("CLEO") functions throughout the state is DENIED.

(b) Plaintiffs' request for a declaratory judgment that Defendants may not perform CLEO functions is DENIED.

(c) Plaintiffs' request that each of them be designated the CLEO in their respective jurisdictions is SUSTAINED only to the extent that each sheriff qualifies as a CLEO according to the limitations and procedures set forth in this order.

IT IS FURTHER ORDERED that the Kentucky State Police ("KSP") shall send a notice to all potential CLEOs in Marshall, Daviess, Calloway, and Ballard Counties, which notice shall state, among other things:

"For the past _____ months KSP has performed certain responsibilities for weapons purchase investigations mandated by the Brady Act. The United States District Court of the Western District of Kentucky has now determined that in _____ County the county sheriff or other local law enforcement officials may qualify to perform these Brady Act responsibilities if they desire to do so. Therefore, in compliance with the general intention of the Brady Act, KSP will convene a meeting on [date] at [time] at [location] for the purpose of determining a chief law enforcement officer ('CLEO') in this county for purposes of the Brady Act."

IT IS FURTHER ORDERED that KSP should convene the above-referenced meeting within 45 days of this order.

IT IS FURTHER ORDERED that KSP shall relinquish its responsibilities as Brady Act CLEO in any part of Marshall, Daviess, Calloway, or Ballard Counties within sixty (60) days after the KSP's receipt of correspondence, approved by representatives of all potential CLEOs in the county, stating that (1) a certain law enforcement entity or entities qualify as a CLEO, (2) they wish to undertake Brady Act CLEO responsibilities, (3) they wish to withdraw their *de facto* designation of KSP as CLEO, and (4) they identify the area of their jurisdiction for which they will serve as CLEO.

IT IS FURTHER ORDERED that KSP shall continue to perform its responsibilities as designated Brady Act CLEO in all other geographic areas not covered by this Order.