**Michael T. MOIR, Plaintiff-Appellant,**

v.

**GREATER CLEVELAND REGIONAL TRANSIT AUTHORITY; Amalgamated Transit Union, Local #268, Defendants-Appellees.**

No. 89-3275.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 30, 1989.

Decided Feb. 6, 1990.

Dale J. Belock (argued), Cleveland, Ohio, for plaintiff-appellant.

Robert E. Davis (argued), James L. Hardiman, Hardiman, Alexander, Buchanan & Howland, Cleveland, Ohio, for defendants-appellees.

Before KEITH, JONES and BOGGS, Circuit Judges.

KEITH, Circuit Judge.

Plaintiff Michael T. Moir ("Moir") appeals from the judgment and order of the district court dismissing his complaint alleging that Greater Cleveland Regional Transit Authority ("GCRTA") and the Amalgamated Transit Union, Local 268 ("ATU") (collectively "defendants") engaged in unfair labor practices. We conclude that the district court properly dismissed Moir's claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. For the reasons set forth below, we AFFIRM.

I.

A.

Michael Moir was employed by GCRTA from January 11, 1978 until August 10, 1988. During this employment period, Moir was a member of ATU.[1] Stanley

---

**1.** ATU is the exclusive bargaining agent of GCRTA employees ranging from Grades 1 through 6.

Shope ("Shope"), GCRTA General Supervisor of Outside Garages, notified Moir, on January 12, 1987, that he had been promoted to the position of Equipment Electrician, Grade 5, as a result of receiving the highest rating on a promotion examination. The promotion was pursuant to GCRTA's Merit System Rules [2] and the collective bargaining agreement between GCRTA and ATU. Shope made a payroll entry reflecting the promotion and directed Moir to report to the GCRTA Brooklyn station to begin his new job. Robert James, GCRTA's Director of Personnel, notified Joseph Bartkiewicz ("Bartkiewicz"), the Director of Equipment, of Moir's promotion.

On March 3, 1987, Shope notified Moir that because another GCRTA employee was being transferred to replace Moir, he would not be permitted to retain his position as Equipment Electrician, Grade 5.

### B.

Moir filed a grievance with ATU on March 5, 1987 indicating that although he had satisfactorily performed his duties, GCRTA was replacing him in violation of the Merit System Rules. A hearing was held on March 26, 1987. In a memorandum dated March 30, 1987, Bartkiewicz notified Moir that he was removed from the position as Equipment Electrician, Grade 5 because of a lateral transfer of another electrician.[3] Moreover, Bartkiewicz explained that Moir's promotion had been rescinded and that he should return to his original position.

Moir appealed the rescission of his promotion and a hearing was held on April 28, 1987. A memorandum dated April 29, 1987, indicated that GCRTA's decision to remove Moir from his promoted position would stand.[4] Although Moir was ranked first on the January 5, 1987 eligibility list for Equipment Electrician, Grade 5, Edward McDermott was transferred to the position because of his seniority. ATU agreed with the disposition of Moir's appeal.

### C.

Moir instituted this action on October 27, 1988 pursuant to Section 301 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 185(a), as amended by Section 2(2) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 152(2). Moir complains that by rescinding his promotion, GCRTA violated his rights under the collective bargaining agreement. Additionally, ATU failed to protect his job security rights and therefore breached its duty to represent him fairly. As a result, Moir has incurred financial losses and suffered emotional distress.

Defendants moved for dismissal based on two theories: lack of subject matter jurisdiction and failure to exhaust administrative remedies. Fed.R.Civ.P. 12(b)(1) and (6). Defendants argued that pursuant to the LMRA, 29 U.S.C. § 152(2), GCRTA is a "political subdivision" of the State of Ohio and, as such, is exempt from Section 301 of the NLRA, 29 U.S.C. § 185(a), the statute upon which Moir seeks to premise federal jurisdiction. Additionally, defendants assert that the alleged actions constitute an unfair labor practice which falls within the exclusive jurisdiction of the Ohio State Employment Relations Board ("SERB"). Ohio Rev.Code § 4417.02. Thus, Moir failed to exhaust his state administrative remedies prior to commencing an action in state court. Defendants also argued that Moir is now time-barred from filing a claim with SERB.

The district court held that GCRTA is a "political subdivision" of the State of Ohio within the meaning of 29 U.S.C. § 152(2), and therefore is exempt from federal juris-

---

2. The Merit System Rules are a set of regulations promulgated by the GCRTA Board of Trustees for the purpose of establishing guidelines for the enforcement of the Civil Service provisions of Section 142–1 of the Charter of the City of Cleveland.

3. In his complaint, Moir refers to two memoranda, dated March 30, 1987 and April 29, 1987 respectively, that were issued in the grievance proceedings. These memoranda are not included in the record, because they were not filed with the district court.

4. See supra note 3.

diction. Pursuant to Fed.R.Civ.P. 12(b)(1), the district court dismissed Moir's complaint for lack of subject matter jurisdiction.[5] Moir filed a timely notice of appeal with this court on April 3, 1989.

On appeal, Moir advances two arguments. First, Moir contends that the "political subdivision" exemption does not apply to defendants. Therefore, the district court erred in dismissing Moir's complaint for lack of subject matter jurisdiction. Second, Moir argues that since the complaint arises out of a collectively bargained contract governed by the NLRA which preempts Ohio law and intra-union procedures, the exhaustion of administrative remedies requirement is inapposite.

## II.

### A.

■ This case requires us to conduct a de novo review of the district court's dismissal of the claims against GCRTA and ATU pursuant to Fed.R.Civ.P. 12(b)(1). *Giannini v. Committee of Bar Examiners of the State Bar of California*, 847 F.2d 1434, 1435 (9th Cir.1988) (per curiam); *San Francisco County Democratic Central Committee v. Eu*, 826 F.2d 814, 818 n. 3 (9th Cir.1987). Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir.1986). Moreover, the court is empowered to resolve factual disputes when subject matter jurisdiction is challenged. *Rogers*, 798 F.2d at 915, 918 (contrasting analysis under Rule 12(b)(6) where existence of genuine

issues of material fact warrants denial of the motion to dismiss). Defendants moved for dismissal based on both Rules 12(b)(1) and (6). However, we are bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction. *See Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (motion to dismiss for failure to state a cause of action may be decided only after establishing subject matter jurisdiction, since determination of the validity of the claim is, in itself, an exercise of jurisdiction); Wright & Miller, 5 *Federal Practice and Procedure* § 1350 at 548 (1969).

### B.

Moir contends that the LMRA "political subdivision" exemption does not apply to GCRTA and ATU; therefore Section 301 of the NLRA confers federal subject matter jurisdiction over this action. Accordingly, dismissal of his complaint was in error. Defendants counter that they satisfy the requirements for the "political subdivision" exemption. We agree with defendants and conclude that the district court properly dismissed Moir's complaint for lack of subject matter jurisdiction.

■ Section 301 of the NLRA, 29 U.S.C. § 185(a), establishes federal subject matter jurisdiction in contract disputes between an *employer* and a union representing employees in an industry affecting commerce.[6] However Section 2(2) of the LMRA, 29 U.S.C. § 152(2), amended the NLRA to specifically exclude political subdivisions and labor unions (except when acting as an employer) from its definition of the term "employer."[7]

5. After finding that it lacked subject matter jurisdiction, the district court declined to address the issues of "whether Moir's claims would lie within the jurisdiction of the Ohio State Employment Relations Board [and] whether his claims are now time-barred." *Moir v. Greater Cleveland Rapid Transit Authority, et al.*, No. C88–3979, slip op. at 7 (N.D.Ohio Mar. 3, 1989).

6. Section 301(a) of the NLRA, 29 U.S.C. § 185(a) provides:
Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

7. Section 2(2) of the LMRA, 29 U.S.C. § 152(2) provides, in pertinent part:
The term "employer" ... shall not include ... any State or political subdivision thereof ... or any labor organization (other than when acting as an employer)....

ATU's status as collective bargaining agent for Moir qualifies it for the labor organization exemption of 29 U.S.C. § 152(2). Thus, dismissal of Moir's claims against ATU was proper. However, the question of whether GCRTA is a "political subdivision" of the State of Ohio and, therefore, subject to the "political subdivision" exemption of the LMRA requires more extensive analysis. After careful consideration of GCRTA's creation and administrative operations in light of the legislative history of the relevant federal statutes, Ohio law, and the Supreme Court's decision in *National Labor Relations Board v. Natural Gas Utility District of Hawkins County, Tennessee*, 402 U.S. 600, 91 S.Ct. 1746, 29 L.Ed.2d 206 (1971), we conclude that GCRTA is a "political subdivision" within the meaning of 29 U.S.C. § 152(2).

Neither the LMRA nor its legislative history provides adequate guidance regarding the definition of the term "political subdivision." [8] However, the legislative history of the LMRA does reveal that the "political subdivision" exemption was enacted "since governmental employees did not *usually* enjoy the right to strike." *Natural Gas*, 402 U.S. at 604 & n. 3, 91 S.Ct. at 1749 & n. 3 (citations omitted) (emphasis added). Moir argues that because GCRTA employees can strike, the "political subdivision" exemption is not applicable to GCRTA. We

---

**8.** In *Crilly v. Southeastern Pennsylvania Transportation Authority*, 529 F.2d 1355 (3rd Cir. 1976), the Third Circuit conducted an extensive investigation into the legislative history and interrelationship of the NLRA as amended by the LMRA. In support of its finding that the Southeastern Pennsylvania Transportation Authority ("SEPTA") was a "political subdivision" and therefore exempt from the federal jurisdiction conferred by the NLRA, 29 U.S.C. § 185(a), as amended by the LMRA, 29 U.S.C. § 152(2), the Third Circuit reasoned that although coverage of state and local government employees might be consistent with the dominant purposes of the NLRA, "the limited evidence of the congressional intent behind the cross-referencing of the definitions section" does not support such an extension of coverage. *Id.* at 1357. We find the Third Circuit's reasoning to be persuasive.

At the same time that the *Crilly* court was considering the extent of the political subdivision exemption, Congress was considering a bill, H.R. 77, whose text provided, "employees of States and political subdivisions thereof shall be subject to the provisions of the National Labor Relations Act." H.R. 77, 94th Cong., 1st Sess. (1975). The bill, H.R. 77, was introduced by Congressman Frank Thompson on January 14, 1975. It was referred to the Committee on Education and Labor where it remained without ever reaching the floor of Congress.

In a meeting of the Subcommittee on Labor–Management Relations of the Committee on Education and Labor, Congressman Thompson stated that "[s]tate and local employees were excluded from the protections and restraints of the National Labor Relations Act when it was enacted in 1935. Absolutely no one at that time, or during the 1947 Taft–Hartley Amendments, foresaw the need for regulating labor-management relations in the public sector.... In contrast to the relatively stable and long-established collective bargaining patterns which exist in the private sector we find increasing employee militancy, a tremendous growth in public employee unions, a spiraling wave of strikes, and a totally inadequate crazy-quilt pattern of State laws which range from the progressive to the reactionary." *Public Employee Labor–Management Relations: Hearings on H.R. 77 Before the Subcomm. on Labor–Management Relations of the House of Representatives Committee on Education and Labor*, 94th Cong., 1st Sess. 3 (1975) (statement of Congressman Frank Thompson, Subcommittee Chairperson).

Opponents of H.R. 77 argued that the NLRB's decision-making structure could not accommodate the determination of private and public sector disputes in a single federal forum. Because many states have tailored public employee bargaining to fit within the rubric of existing state institutional frameworks, opponents maintained that federal legislation should not grant state employees the right to strike. *See Oversight Hearings on the National Labor Relations Board Before the Subcomm. on Labor Management Relations*, 94th Cong., 1st Sess. 27 (1975) (prepared statement of Edward Miller, former Chairperson of the National Labor Relations Board). In addition, opponents maintained that H.R. 77 failed to acknowledge fundamental distinctions between public and private sector employment. *See Public Employee Labor–Management Relations: Hearings on H.R. 77 Before the Subcomm. on Labor Management Relations of the House Committee on Education and Labor*, 94th Cong., 1st Sess. 104 (1975) (statement of S. Rayburn Watkins, President of the National Labor–Management Foundation) (Public employees deal solely with services provided under monopoly conditions. While the costs of unionism in the private sector can be passed on by higher prices, the costs of unionism in the public sector can only be passed on through higher taxes.) The committee's decision to maintain the status quo and reject the abolition of the "political subdivision" exemption permits us to infer the persuasive merit of the arguments opposing H.R. 77.

reject this argument since state statutes granting public employees the right to strike are not determinative of whether a public entity qualifies for the "political subdivision" exemption.

Federal law governs the determination of whether an "entity created under state law is a 'political subdivision' of the State" and therefore exempt from "employer" status under the NLRA, 29 U.S.C. § 185(a), as amended by the LMRA, 29 U.S.C. § 152(2). *National Labor Relations Board v. Natural Gas Utility District of Hawkins County, Tennessee*, 402 U.S. 600, 603, 91 S.Ct. 1746, 1749, 29 L.Ed.2d 206 (1971). In *Natural Gas*, the Supreme Court found that the Natural Gas Utility District of Hawkins County is a "political subdivision" within the meaning of 29 U.S.C. § 152(2) because: (1) its income from bonds is tax exempt as income from an obligation of a political subdivision under 26 U.S.C. § 103; (2) it holds the authority to exercise the power of eminent domain; and (3) its commissioners are responsible to public officials. *Id.* The Court also endorsed the National Labor Relations Board's ("the Board") test for determining whether an entity falls within the "political subdivision" exemption. *Id.* at 604, 91 S.Ct. at 1749. Likewise, we find the Board's construction of the statutory term is entitled to substantial deference. *Id.* at 605, 91 S.Ct. at 1749–50 (citing *NLRB v. Randolph Electric Membership Corp.*, 343 F.2d 60, 62 (4th Cir.1965)); *see also NLRB v. Atkins & Co.*, 331 U.S. 398, 414, 67 S.Ct. 1265, 1273–74, 91 L.Ed. 1563 (1947) (when interpreting the definitions under 29 U.S.C. § 152(2) the responsibility of representing the public interest and reaching a judgment after giving weight to the relevant factors rests primarily with the Board).

The Board limits the political subdivision exemption to "entities that are either (1) created directly by the state, so as to constitute departments or administrative arms of the government, *or* (2) administered by individuals who are responsible to public officials or to the general electorate." *Natural Gas*, 402 U.S. at 604–05, 91 S.Ct. at 1749–50 (emphasis added).

GCRTA satisfies both prongs of the Board's "political subdivision" test articulated in *Natural Gas*. GCRTA satisfies the first prong of the Board's test, because it was created by the state pursuant to Ohio Rev.Code § 306.32 which empowers counties, municipal corporations and townships to create transit authorities.[9] A companion statute, Ohio Rev.Code § 306.31 delegates state authority to GCRTA through its declaration that "[a] regional transit authority so created is a political subdivision of the state." While state law declarations of an entity's public purpose are not controlling, when considered along with GCRTA's operations and administration, such a declaration weighs heavily in favor of finding that GCRTA is a "political subdivision" within the meaning of the LMRA, 29 U.S.C. § 152(2). *See Natural Gas*, 402 U.S. at 602, 604, 91 S.Ct. at 1749; *see also Crilly v. Southeastern Pennsylvania Transportation Authority*, 529 F.2d 1355, 1363 (3rd Cir.1976) (holding that SEPTA, created directly by an act of the Pennsylvania legislature, is a "political subdivision" within the meaning of 29 U.S.C. § 152(2)).

GCRTA satisfies the second prong of the Board's "political subdivision" test since it is administered by officials who are responsible to public officials. By statute, GCRTA is administered by a board of trustees appointed by various municipal and county officials. Ohio Rev.Code § 306.33.[10] The appointing officials retain

---

**9.** Ohio Rev.Code § 306.32 provides, in pertinent part:

Any county, or any two or more counties, municipal corporations, townships, or any combination thereof, may create a regional transit authority by the adoption of a resolution or ordinance by the board of county commissioners of each county, the legislative authority of each municipal corporation, and the board of township trustees of each township which is to

create or to join in the creation of the regional transit authority.

**10.** Ohio Rev.Code § 306.33 provides, in pertinent part:

A board of trustees of [a regional transit authority] created by two or more political subdivisions shall consist of such number of members who shall have such qualifications and who shall be appointed by such public officers as shall be provided in the resolutions or ordi-

the power to remove a trustee for misfeasance, nonfeasance or malfeasance. *Id.* The second prong of the Board's "political subdivision" test directly addresses the relationship between the GCRTA Board of Trustees and the municipal and county officials who appoint them. Because GCRTA qualifies as a "political subdivision" under both prongs of the Board's test, we find that the district court properly dismissed Moir's complaint for lack of subject matter jurisdiction.[11]

## III.

In sum, since GCRTA was created by the State of Ohio through a delegation of its authority and GCRTA is administered by a Board of Trustees whose members are responsible to elected officials, we hold that GCRTA is a "political subdivision" of the State within the meaning of 29 U.S.C. § 152(2). Additionally, we find that ATU is a "labor organization" within the meaning of 29 U.S.C. § 152(2). Therefore, GCRTA and ATU are exempt from the federal jurisdiction conferred by Section 301 of the NLRA, 29 U.S.C. § 185(a). As we lack subject matter jurisdiction in this action, the arguments raised to support defendants' motions to dismiss pursuant to Rule 12(b)(6) are rendered moot.[12] For the foregoing reasons, the judgment of the Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, is AFFIRMED.

---

nances creating such authority.... The appointing authority may at any time remove a trustee for misfeasance, nonfeasance, or malfeasance.

11. GCRTA did not indicate, in its brief or at oral argument, whether it had the authority to exercise eminent domain or whether the income from its bonds is tax exempt under the "political

subdivision" exemption of 26 U.S.C. § 103. Thus, our analysis stops short of an application of the additional factors that the Supreme Court articulated in *Natural Gas,* 402 U.S. at 608–09.

12. In support of their 12(b)(6) motions to dismiss, ATU and GCRTA argued that Moir failed to exhaust his administrative remedies and is now time-barred from filing a claim with SERB.