NATIONAL RIFLE ASSOCIATION OF AMERICA, Michigan United Conservation Clubs, Olympic Arms, Calico Light Weapons Systems, Navegar, Inc., D.C. Engineering, Inc., Ammo Dump, Glenn Duncan, Charles Duncan, James E. Flynn, James J. Fotis, Thomas L. Heritier, and Craig D. Sandler, Plaintiffs,

v.

John W. MAGAW and United States of America, Defendants.

No. 95–CV–10045–BC.

United States District Court,
E.D. Michigan,
Northern Division.

Nov. 22, 1995.

*AMENDED OPINION ON DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT ON THE QUESTION OF JURISDICTION*

CLELAND, District Judge.

## I. Introduction

Plaintiffs' complaint challenges the constitutionality of the Violent Crime Control and Law Enforcement Act of 1994, which amends the criminal provisions of the Gun Control Act of 1968, 18 U.S.C. §§ 921–930. The 1994 Amendments, which went into effect on September 13, 1994, criminalize for a ten-year period most future manufacture, transfer, and possession of semiautomatic assault weapons and large capacity ammunition feeding devices. The complaint alleges that the definition of "semiautomatic assault weapon," as contained in 18 U.S.C. § 921(a)(30), is unconstitutionally vague; that Congress exceeded the scope of its constitutional power by enacting the Amendments; that the designation of prohibited firearms is arbitrary and capricious and not rationally related to any legitimate governmental purpose; and that the interpretation of the term "firearm" for purposes of the grandfather provision of the statute by the Bureau of Alcohol, Tobacco, and Firearms is arbitrary and capricious.

Defendants have moved to dismiss the complaint, alleging that this court lacks subject matter jurisdiction because the complaint does not present a justiciable "case" or "controversy" within the meaning of Article III of the United States Constitution. Specifically, the defendants allege that the plaintiffs do not have standing because they have not alleged an actual or imminent injury, and that the matter is not ripe for adjudication because there is no pending or impending criminal prosecution of any of the plaintiffs based on the criminal provisions being challenged.

On August 9, 1995, the court heard oral argument on the Motion to Dismiss or for Summary Judgment on the Question of Jurisdiction. After review of the parties' written submissions and consideration of the arguments presented at the hearing, the court concludes that it lacks subject matter jurisdiction and, accordingly, dismisses the case.

M. Carol Bambery, Mich. United Conservation Clubs, Lansing, MI, James H. Warner, Michael K. McCabe, National Rifle Association, Fairfax, VA, Gerald W. Pergande, Bay City, MI, for plaintiffs.

Andrea Newmark, Dept. of Justice–Civil Division, Washington, D.C., Michael J. Hluchaniuk, Assistant U.S. Attorney, Bay City, Michigan, for defendants.

## II. Background

The plaintiffs are two nonprofit gun rights corporations, two federally licensed firearms dealers, three retired police officers, two firearms manufacturers, an ammunition feeding device manufacturer, and two individuals. The defendants are John Magaw, the director of the Bureau of Alcohol, Tobacco, and Firearms ("BATF"), and the United States of America.

There is no allegation in the complaint that any plaintiff has been or is currently being prosecuted under the statute. Rather, Plaintiffs aver that they "desire" and "wish" to engage in certain possibly prohibited activities but are "restrained" and "inhibited" from doing so. Plaintiffs allege that they "are unable and unwilling, in light of the serious penalties threatened for violation of the statute, to obtain and possess the firearms and large capacity ammunition feeding devices prohibited by the statute." (para. 46). However, Plaintiffs also allege that they "will purchase, firearms, including those on the enumerated list of proscribed firearms." (para. 55). The complaint further avers, "If they are prudent, and are unwilling to risk felony penalties, they must refrain from the manufacture, transfer or possession of firearms which, in fact, may be lawful." (para. 58). Plaintiffs Olympic Arms and Calico Light Weapons Systems allege that they "involuntarily changed the names of their firearms" and "involuntarily ceased manufacturing firearms whose configuration might fit the generic criteria definition." (para. 48).

The plaintiffs have submitted affidavits supporting the allegations in the complaint. Two members of the National Rifle Association, James G. Giragosian and Stefan B. Tahmassebi submitted declarations stating that they wish to engage in certain conduct but are inhibited from doing so by a fear of prosecution and a possible felony conviction. Kevin M. Cunningham, another member of the National Rifle Association, submitted a declaration stating that he telephoned a Mr. Ed Owen of the BATF and posed to Owen a hypothetical question whether a folding stock could be installed to a Ruger Mini–14 rifle, a semiautomatic rifle which accepts a detachable magazine. According to the Cunningham declaration, Owen told Cunningham that if an individual were to install the folding stock, he "could be prosecuted for a federal felony." Phillip C. Martel, the president of Plaintiff D.C. Engineering, Inc., submitted a declaration stating, "If this ban is unconstitutional as applied to intrastate sales, we would be ready, willing and able to transfer such magazines [ammunition feeding devices] in intrastate commerce to fellow residents of Michigan. Our magazines are stamped with our name and location and could be stamped with date of manufacture so that it would be simple to determine if anyone did in fact transfer them out of state." Plaintiff Glenn Duncan has submitted a declaration stating that he is "unable to ascertain the meaning of the various restrictions," that if the ban is invalid, he stands ready to begin at once to fulfill his customers' requests to assemble firearms from components presented by the customers, and that the statute "has already restricted our doing business, limits us in the actions we can take today, and will restrict our actions within the immediate future."

The plaintiffs have also submitted a transcript of proceedings in a federal criminal prosecution, *United States of America v. Corcoran*, No. 88–11 (W.D.Pa. proceedings conducted April 5, 1988). It appears from a review of the portion of the trial transcript submitted by Plaintiffs that Corcoran was being prosecuted for unlawfully transferring a machine gun. The court dismissed several of the counts against the defendant, finding that the BATF was prosecuting Corcoran for transferring a weapon without an auto sear, which BATF argued was a machine gun within the meaning of statutes regulating the transfer of machine guns because it could fire more than one bullet with a single pull of the trigger, though BATF had previously ruled that a weapon without an auto sear is not a machine gun. The plaintiffs have submitted other documents relating to the *Corcoran* case, as well as transcripts on hearings before the Senate Judiciary Committee and a Report of the Subcommittee on the Constitution of the Senate Judiciary Committee. Though the evidentiary value of some of Plaintiffs' submissions to the questions of

standing and ripeness is limited, the court has nevertheless reviewed them.

## III. Standard

Defendants bring their motion pursuant to Fed.R.Civ.P. 12(b)(1), lack of jurisdiction over the subject matter; Rule 12(b)(6), failure to state a claim upon which relief can be granted; and Rule 56, for summary judgment.

■ Fed.R.Civ.P. 12(b)(1) authorizes a defendant to move for dismissal based on lack of subject matter jurisdiction. A motion under Rule 12(b)(1) may be used to attack two different types of defects. The first is the pleader's failure to allege facts in the complaint sufficient to show subject matter jurisdiction. The second is the court's actual lack of jurisdiction over the subject matter, a defect that may exist despite the formal sufficiency of the allegations in the complaint. *Wright & Miller, Federal Practice and Procedure: Civil 2d § 1350.* This motion falls into the second category. Defendants allege that there is no justiciable case or controversy within the meaning of Article III of the United States Constitution. The burden of proof is on the plaintiff, the non-moving party in this case. "Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Regional Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990) (citing *Rogers v. Stratton Indus., Inc.,* 798 F.2d 913, 915 (6th Cir.1986)). When deciding a motion to dismiss for lack of subject matter jurisdiction, no presumptive truthfulness attaches to the allegations in the complaint. Rather, "the court is empowered to resolve factual disputes when subject matter jurisdiction is challenged." *Id.* The Sixth Circuit has also ruled that where defendants move for dismissal based on both Rules 12(b)(1) and 12(b)(6), the court is bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if the court lacks subject matter jurisdiction. *Id.* (citing *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). The same rationale would, of course, apply to Defendants' Rule 56 motion. Accordingly, the court analyzes Defendants' motion under Fed.R.Civ.P. 12(b)(1).

## IV. Discussion

■ Defendants' motion raises two issues: standing and ripeness. Standing is concerned with who is a proper party to litigate a particular matter, while ripeness determines when that litigation may occur. *Chemerinsky, Federal Jurisdiction, § 2.4 (1989).* There is considerable overlap between the two doctrines where, as here, the argument that the plaintiffs lack standing rests on an allegation that no—or insufficient—injury has occurred. In such a situation, the court could characterize the problem as lack of sufficient injury to these plaintiffs (standing) or lack of sufficient injury at this time (ripeness). "If no injury has occurred, the plaintiff might be denied standing or the case might be dismissed as not ripe." *Id.* "[S]tanding focuses on whether the type of injury alleged is qualitatively sufficient to fulfill the requirements of Article III and whether the plaintiff has personally suffered that harm, whereas ripeness centers on whether that injury has occurred yet." *Id.*

In *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), the United States Supreme Court explained that the "irreducible constitutional minimum of standing" contains three elements: First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 560–61, 112 S.Ct. at 2136. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* (citing *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990)). The appropriate focus in the case at bar is on the first element—"injury in fact."

The United States Supreme Court has stated that in deciding whether a case is ripe, it looks primarily to two considerations: "the hardship to the parties of withholding court consideration" and "the fitness of the issues for judicial decision." *Abbott Lab. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). In *Abbott,* the seminal case on the ripeness doctrine, the Court explained that the "basic rationale" of the ripeness requirement is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.* at 148, 87 S.Ct. at 1515.

In deciding whether this court can and should exercise subject matter jurisdiction over Plaintiffs' pre-enforcement challenge to the constitutionality of a federal statute, the court is called upon to weigh two competing concerns. On one hand, if the court will not rule on a pre-enforcement challenge, the plaintiffs must either forego activity which they believe to be constitutionally protected or else subject themselves to criminal prosecution and take their chances that their position will be accepted by the court before which they are brought. The United States Supreme Court described this dilemma in *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), as the Court considered whether to hear a First Amendment-based pre-enforcement challenge to a state criminal statute:

> [A] refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding.

*Id.* at 462, 94 S.Ct. at 1217. The same difficulty obtains where, as here, the plaintiff challenges a federal statute. However, if one accepts the premise that Congress and the federal courts are more likely than their State counterparts to follow the dictates of the United States Constitution—the premise which underlies the Supremacy Clause and the post-Civil War trend toward federalization—this difficulty may be somewhat less pronounced where the allegedly unconstitutional statute is a federal one. And, of course, the chilling effect on the plaintiff's conduct could be expected to decrease in proportion to the clarity of the alleged constitutional violation, *i.e.,* when the fog between Scylla and Charybdis lifts, the course between them is more easily navigated. If Congress were to enact a law which was patently unconstitutional, one would expect that many would be willing to risk prosecution for breaking it, confident that the courts would strike the measure down.

To be weighed against these navigational concerns are the firmly-established policies which underlie the "case" or "controversy" requirement of Article III of the Constitution. The United States Supreme Court has repeatedly stressed the importance of judicial self-restraint in preserving the balance of power among the three branches of government and promoting judicial efficiency, and the Court has held that there are prudential considerations beyond the case or controversy requirement which militate against the giving of advisory opinions. Chief Justice Warren explained that the "words [cases and controversies] define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government." *Flast v. Cohen,* 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968). The doctrines of standing and ripeness also conserve judicial resources, allowing the federal courts to focus their attention on the matters most deserving of review. Refusal by the court to decide cases involving conjectural or hypothetical injury improves judicial decision-making by sharpening the focus of the court's inquiry, and it promotes fairness to individuals who are not litigants before the court by limiting the scope of decisions to factual situations which have been presented to the court. As Justice Frankfurter noted, "The best teaching of this Court's experience admonishes us not to entertain constitutional questions in advance of the strictest necessity." *Poe v. Ullman,* 367 U.S. 497, 503, 81 S.Ct. 1752, 1756, 6 L.Ed.2d 989 (1961) and *Parker v. County of Los Angeles,* 338 U.S. 327, 333, 70 S.Ct. 161, 163–64, 94 L.Ed. 144 (1949). Justice Black com-

mented in *Younger v. Harris*, 401 U.S. 37, 52, 91 S.Ct. 746, 754, 27 L.Ed.2d 669 (1971), "The power and duty of the judiciary to declare laws unconstitutional . . . , broad as it is, does not amount to an unlimited power to survey the statute books and pass judgment on laws before the courts are called upon to enforce them."

The Supreme Court has balanced these two considerations, setting forth guiding principles to determine the justiciability of a pre-enforcement challenge to a criminal statute. "A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. Farm Workers*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (citing *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974)). If prosecution is "certainly impending" or if "there exists a credible threat of prosecution" under the challenged statute, a plaintiff has standing, *Babbitt*, 442 U.S. at 298, 99 S.Ct. at 2308–09, but " 'persons having no fears of state prosecution except those that are imaginary or speculative are not to be accepted as appropriate plaintiffs.' " *Id.* (citing *Younger v. Harris*, 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971); *Golden v. Zwickler*, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969)). " 'The party who invokes the power [to annul legislation on grounds of its unconstitutionality] must be able to show not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement.' " *Poe v. Ullman*, 367 U.S. 497, 505, 81 S.Ct. 1752, 1757, 6 L.Ed.2d 989 (1961) (quoting

*Massachusetts v. Mellon*, 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923)). The United States Court of Appeals for the Sixth Circuit, too, has noted these principles. "Ordinarily, if criminal prosecution is threatened there exists the requisite controversy. However, if the possibility of prosecution is abstract or distant, then no controversy exists." *Parker v. Turner*, 626 F.2d 1, 5 n. 11 (6th Cir.1980) (internal citations omitted).

In *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), Justice Stewart, with whom Chief Justice Burger joined, concurring, stressed the importance of a "genuine threat of enforcement."

> Our decision today must not be understood as authorizing the invocation of federal declaratory judgment jurisdiction by a person who thinks a state criminal law is unconstitutional, even if he genuinely feels 'chilled' in his freedom of action by the law's existence, and even if he honestly entertains the subjectively belief that he may now or in the future be prosecuted under it.

*Id.* at 476, 94 S.Ct. at 1224. Justice Stewart also predicted, "Cases where such a 'genuine threat' can be demonstrated will, I think, be exceedingly rare." *Id.* at 476, 94 S.Ct. at 1224. This prediction has proved accurate, especially in pre-enforcement challenges not invoking the First Amendment. In the more than twenty years since Justice Stewart made his forecast, only one plaintiff bringing such a challenge has been found to have standing.[1]

▮▮▮▮ This court holds that the case at bar is not one of the exceedingly rare instances outside of the First Amendment con-

---

1. That case, *Mack v. United States*, 856 F.Supp. 1372, 1377 (D.Ariz.1994), is currently on appeal. The *Mack* court held that a sheriff had standing to challenge the criminal penalties in the Brady Act, even though he was not facing an imminent threat of prosecution, saying simply, "Mack is under threat of criminal penalties and thus possesses an injury that can be redressed. The agency's interpretation to the contrary is entitled to no deference." *Id.* Every other court facing the issue addressed in *Mack*, *viz.*, whether a sheriff has standing to challenge the criminal penalties in the Brady Act, came to the opposite conclusion, finding that the case was not justiciable. *See Frank v. United States*, 860 F.Supp.

1030 (D.Vt.1994); *Printz v. United States*, 854 F.Supp. 1503 (D.Mont.1994); *McGee v. United States*, 863 F.Supp. 321, 324 (S.D.Miss.1994); *Koog v. United States*, 852 F.Supp. 1376, 1388 (W.D.Tex.1994); and *Romero v. United States*, 883 F.Supp. 1076, 1079 (W.D.La.1994).

*Springfield Armory, Inc. v. City of Columbus*, 29 F.3d 250 (6th Cir.1994) may be another example. *Springfield Armory* was a challenge by two manufacturers, a dealer, and two potential purchasers of weapons to the constitutionality of a Columbus city ordinance that bans assault weapons. The court did not consider the question of standing on appeal.

text in which the plaintiffs have met their burden of showing the requisite degree of injury to support a finding of standing for a pre-enforcement challenge to a criminal statute. Several plaintiffs have submitted no evidence whatsoever, beyond the bare allegations in the complaint, that they have or will suffer injury. The plaintiffs bear the burden of proving jurisdiction in order to survive a motion challenging subject matter jurisdiction, *Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir.1986)), and, unlike under Fed.R.Civ.P. 12(b)(6), no presumptive truthfulness attaches to the allegations in the complaint. Only Plaintiff D.C. Engineering, Inc., through its president Phillip C. Martel; Plaintiff Glenn Duncan; and Plaintiff National Rifle Association of America, through its members James G. Giragosian, Stefan B. Tahmassebi, and Kevin M. Cunningham, have submitted declarations attesting to the injuries they have suffered.

Martel's declaration states that D.C. Engineering, Inc. is prohibited from manufacturing certain ammunition feeding devices and that, if the ban were found unconstitutional as applied to intrastate sales, D.C. Engineering "would be ready, willing and able to transfer such magazines in intrastate commerce to fellow residents in Michigan." These assertions do not describe a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement; instead, they merely allege that D.C. Engineering would change its practices if the statute were found unconstitutional. This is not enough. Duncan's declaration states that the ban "has directly and immediately affected our business"; that the law is confusing and arbitrary; that, if the ban is invalid, he stands ready to begin at once to assemble prohibited firearms; and that the statute has restricted his business activities. Giragosian alleges that he feels inhibited from engaging in certain conduct and that, in his opinion, the statute is vague. Tahmassebi alleges that he is inhibited from engaging in certain activities because he fears prosecution. Cunningham, an attorney, relates hearsay statements allegedly made by Mr. Ed Owen at the BATF, who allegedly informed Cunningham

that a person could be prosecuted if he installed a folding stock on a Mini–14, something that Cunningham's client, Tahmassebi, alleged that he would like to do. The court finds that none of the declarants has alleged sufficient threat of direct injury to invoke the jurisdiction of this court.

The Supreme Court has stated that an association has standing to bring suit on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 344, 97 S.Ct. 2434, 2442, 53 L.Ed.2d 383 (1977). Because none of the declarations submitted by NRA members allege injury sufficient to confer standing on that individual member in his own right, the declarations are insufficient to confer standing on the National Rifle Association of America. Thus, the court finds that Plaintiffs Michigan United Conservation Clubs, Olympic Arms, Calico Light Weapons Systems, Navegar, Inc., Ammo Dump, Charles Duncan, James E. Flynn, James J. Fotis, Thomas L. Heritier, and Craig D. Sandler have no standing because they have not come forward with any evidence showing that they have suffered an actual or imminent, concrete and particularized injury in fact. Though Plaintiffs D.C. Engineering, Inc., Glenn Duncan, and the National Rifle Association of America have come forward with declarations, those declarations are insufficient to establish standing because they do not show a credible threat of prosecution or other direct, cognizable injury.

Even if the allegations in the complaint were taken as true, as under the standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the plaintiffs have not established the requisite actual or imminent, concrete and particularized injury in fact. Though they have pleaded that they wish to engage in proscribed conduct and that their actions have been chilled by the statute, they have not alleged that they face an immediate threat of prosecution. Rather, the threat of

prosecution, if any, is speculative, abstract, and distant. Indeed, Plaintiffs allege that they "are unable and unwilling . . . to obtain and possess the firearms and large capacity ammunition feeding devices prohibited by the statute." (para. 46). Since the plaintiffs have affirmatively disavowed any intent to engage in the proscribed conduct, the court is constrained to find that they will not face prosecution, and, thus, they suffer no legally cognizable injury. The "chilling effect," which the plaintiffs may have experienced, does not constitute a legally cognizable injury. "[A]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325–26, 33 L.Ed.2d 154 (1972). This is because "[e]very criminal law, by its very existence, may have some chilling effect on personal behavior. That was the reason for its passage." *Doe v. Duling*, 782 F.2d 1202, 1206 (4th Cir.1986). *See also Younger v. Harris*, 401 U.S. 37, 42, 91 S.Ct. 746, 749–50, 27 L.Ed.2d 669 (1971) (dismissing plaintiffs who had not been indicted, arrested or even threatened by the prosecutor, despite those plaintiffs' feeling of inhibition in their conduct caused by the existence of the criminal prohibition they contended was unconstitutionally vague.) Similarly, the allegations of Plaintiffs Olympic Arms and Calico Light Weapons Systems that they "involuntarily changed the names of their firearms" and "involuntarily ceased manufacturing firearms whose configuration might fit the generic criteria definition," (para. 48), show only a subjective "chilling effect," not a legally cognizable injury in fact.

In another part of their complaint, Plaintiffs allege that they "will purchase, firearms, including those on the enumerated list of proscribed firearms." (para. 55). Unsup-

ported by evidence and directly contradicted by other portions of the complaint, (see para. 46), this allegation, too, even if taken as true, is insufficient to confer standing. "Such 'some day' intentions—without any description of concrete plans, or indeed any specification of *when* the some day will be—do not support a finding of 'actual or imminent' injury that our cases require." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564, 112 S.Ct. 2130, 2138, 119 L.Ed.2d 351 (1992).

■ The court also finds that the case at bar is not ripe for adjudication. Because the Crime Control Act does not implicate First Amendment rights, it may be challenged for vagueness only as applied. "It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975) (citing *United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963)).[2] Because the 1994 Amendments have not yet been applied to the plaintiffs, a determination of their vagueness would be premature.

Two other United States District Courts, facing similar challenges to the statute at issue here, have come to the same conclusion as this court reaches today. *See San Diego County Gun Rights Comm. v. Reno*, No. 95–27 H (S.D.Cal. May 18, 1995) (appeal pending) and *Oefinger v. Baker*, No. 86–1396 (D.D.C. October 29, 1986) (finding no subject matter jurisdiction for a challenge to a different amendment to the Gun Control Act, 18 U.S.C. § 921 *et seq.*, which prohibited the transfer or possession of machine guns). A United States Magistrate Judge came to the same conclusion in *Kropelnicki v. United States of America*, No. 1:94–CV–186 (W.D.N.C. June 8, 1995) (review by District Judge pending).

**2.** One paragraph of Plaintiffs' does make reference to the First Amendment. Paragraph 28 alleges, "If the language creating the prohibition on firearms 'known as' these designations, is taken to mean that a manufacturer is forbidden to write that name on a firearm, and means nothing more than this, then this prohibition violates the First Amendment to the Constitution of the United States." However, Plaintiffs' complaint cannot be fairly read to state a claim under the First Amendment. Paragraph 28

makes no reference to non-manufacturer plaintiffs, and the manufacturer plaintiffs do not allege—and the court does not suspect—that their concerns would be alleviated if only they could write certain names on firearms which do not otherwise violate the statute. Rather, it appears that the plaintiffs' difficulty with the statute is its prohibition on manufacture, transfer, and possession of semiautomatic firearms, not on any asserted prohibition on speech.

The court is unpersuaded by the cases cited by the plaintiffs in support of their position that their claims are justiciable. *Frank v. United States,* 860 F.Supp. 1030 (D.Vt.1994) and *Printz v. United States,* 854 F.Supp. 1503 (D.Mont.1994)—both suits brought by sheriffs to challenge the constitutionality of provisions of the Brady Act requiring them to conduct a background check in connection with firearms transactions—are inapposite because neither case found standing to challenge the criminal portions of the act. The sheriffs were able to show injury resulting from the background check requirement: each was required to divert resources away from his state-mandated duties and expend those resources in a manner inconsistent with state statutory duties. Indeed, the *Frank* court expressly found that Sheriff Frank did not have standing to challenge, on Fifth Amendment grounds, the criminal components of the act. *Frank,* 860 F.Supp. at 1036.

*Pennell v. City of San Jose,* 485 U.S. 1, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988) and *National Organization for Women, Inc. v. Scheidler,* —— U.S. ——, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) are also inapposite because both were decided under Fed.R.Civ.P. 12(b)(6)—under which all facts must be taken as true—rather than under Rule 12(b)(1), and neither *Pennell* nor *NOW* involved a pre-enforcement challenge to a criminal statute. *Pennell* was a suit by landlords and a landlords' association challenging a rent control ordinance, while *NOW* was an action under RICO for alleged conspiracy to shut down abortion clinics.

Plaintiffs' reliance on *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1924) and *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) is misplaced because these cases deal with exceptions to the usual rule that one must allege a threat of imminent prosecution in order to have standing. *Pierce* involved a challenge by a Catholic school to the constitutionality of a statute which required children to attend public school and which subjected the parents to criminal penalties if the parents did not send their children to public school. The school, unlike the plaintiffs in this case, could not have challenged the constitutionality of the statute in their defense of a criminal

prosecution, since the school was not subject to prosecution. Furthermore, the Court focused on the economic interest of the school and found "without doubt enforcement of the statute would seriously impair, perhaps destroy, the profitable features of appellees' business and greatly diminish the value of their property." *Id.* at 531, 45 S.Ct. at 572. The plaintiffs in the case at bar have not alleged economic injury stemming from the statutes they challenge. In *Roe,* standing was found because the alleged injury was said to be "capable of repetition yet evading review," a circumstance which cannot be said to be present in the case at bar.

In their brief, exhibits, and oral argument, the plaintiffs emphasized their view that the 1994 Amendments to the Gun Control Act of 1968 are poorly conceived and unartfully drafted. The court does not—indeed, may not, under the Constitution—rule on these contentions. In ruling that the plaintiffs have failed to establish that their claims are justiciable, the court makes no comment on the merits of their claims.

### V. Conclusion

The court finds that Plaintiffs' claims are not justiciable. Accordingly, Defendants' Motion to Dismiss or for Summary Judgment on the Question of Jurisdiction will be granted.